### PFANSTIEHL CHEMICAL CO. v. AMERICAN PLATINUM WORKS et al.

#### No. 5892.

District Court, D. New Jersey.

Sept. 16, 1941.

George D. Richards, of Newark, N. J., and Chritton, Wiles, Davies, Hirschl & Dawson, of Chicago, Ill. (Charles J. Merriam, Bernard A. Schroeder, and Russell Wiles, all of Chicago, Ill., of counsel), for plaintiff.

Lum, Tamblyn & Fairlie, of Newark, N. J. (Ralph E. Lum, of Newark, N. J., of counsel), for defendant American Platinum Works.

Frederick P. Randolph, of New York City (Theodore S. Kenyon and Douglas H. Kenyon, both of New York City, of counsel), for Hecking and O'Brien.

FAKE, District Judge.

This is a declaratory judgment proceeding in which the plaintiff attacks the validity of the defendants' patent, Hecking No. 1,909,616, relating to improvements in pens, pen points and the process of making them. It was applied for in 1927 and issued in 1933.

The claims of the patent in suit relating to the process involved indicate the fusing of a shot-like body having an operative writing surface, the annexation or securing of it to a pen nib, and then the splitting of the point, avoiding further processing of the shot-like body.

Pertaining to the pre-formed shot-like body, the inventor says it is "a body adapted to be split to form complementary portions of a pen point" superficially hardened, of non-corrosive metal and having a polished curved surface.

The resulting product is a pen body with a split and pointed outer end; a pen point secured thereto comprising two substantial halves of a fused body split in the center, the halves of which are hard curved writing surfaces of a shape caused by the natural properties of the metal.

Referring to the prior art in the specification, the inventor says that gold pens were formally tipped with a material known in the trade as "iridium" or "iridium composition", which material is still used. This material was furnished to the pen maker in irregular shapes and configuration, and to provide a smooth writing surface it was necessary to trim and grind the tips after they had been annexed to the nib. This resulted in considerable labor and expense, and the object of his invention is substantially to avoid the necessity of such trimming and grinding of the iridium and the furnishing of a smoother writing point. The drawings show in Figure 1 an irregular shaped piece of iridium such as was usually furnished to the trade and depict in Figures 2 to 11 inclusive the different stages reached in the manufacture including the finished product; all of which is more fully and in detail dealt with in the findings of fact filed herewith.

It appears that a patent was applied for in February of 1903 and issued to one Kegrize in September of that year, No. 744,557. This patent also relates to pens, and the aim of Kegrize was to provide, as he says, "a reversible pen" that could be used in writing either side up. He teaches the use of an iridium ball-shaped tip annexed to the nib or pen-blank to form the writing point or surface which balls are split either prior or subsequent to their being dressed. The drawings annexed to this patent disclose substantially all that is pictured in the drawings annexed to the Hecking patent in suit. True, they are not exact copies but for all practical purposes they are the same. In fact, when Hecking was shown a drawing of Figure 8 from Kegrize, he thought it was his own invention. He apparently had no prior or knowledge whatever of Kegrize until after the drawing had been shown to him in open court. He has believed over the years that he was the first and only one to think out what Figure 8 of Kegrize teaches.

Does invention reside in the process of fusing the small ball-shaped pen points, thereby avoiding grinding and trimming? I think not. It was well known in the art that the fusing or melting of iridium, so called, would when so desired result in pellets or small spheres with a smooth surface. Their application to pen points was, in view of the prior art, not invention but merely an instance of that dexterity which one skilled in the art would naturally resort to. Moreover, as has been seen, Kegrize pictured it, if he did not claim it, long before Hecking. The test to be applied here is not, however, whether Kegrize claimed it. It is quite sufficient that he taught it, and here he taught it in the very art with which we are concerned. Nor does patentable invention lie in the grinding and trimming of the iridium before its annexation as distinguished from doing so after annexation. This is merely a

resort to one of two choices to accomplish the same result, both of which were obvious and open to general use. While it is true that nearly every invention seems simple when explained, the law has not gone so far as to hold that because a thing is simple it is patentable. Here, what Hecking has done rises no higher than an incident of the type which occurs every day in shop practice, and which if patentable would greatly retard reasonable progress in the arts.

Having reached the conclusion that the Hecking patent in suit is invalid, it is not necessary to pass upon the other issues raised in this cause. Nor is it necessary to cite the cases relied upon, since to do so would be to spread upon the record extracts from the cases with which the patent Bar and the Courts are familiar.

A decree will be entered in conformity herewith.